# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANCIS V. HUBER and JEAN J. HUBER | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. 3:2007-145 |
| v. | ) | |
| | ) | |
| MAURICE A. LAWRUK and PENN ALTO HOTEL, INC. and PENN ALTO SERVICES, INC. and PENN ALTO ASSOCIATES LIMITED PARTNERSHIP, | ) | JUDGE GIBSON |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION and ORDER OF COURT

**GIBSON, J.**

This matter comes before the Court on the Plaintiffs' Petition for Attorneys' Fees and Costs (Document No. 121). The Court now **GRANTS** Plaintiffs' Petition, and awards the Plaintiffs $118,007.42 in fees and costs.

### Facts

Francis Huber and Jean Huber (hereinafter the "Hubers") and Maurice Lawruk (hereinafter "Lawruk") were joint owners of the Penn Alto Hotel ("Hotel") until 1989. The Hubers lived in the Hotel and managed it since the parties became partners in owning and operating the hotel in 1974. In 1989, the Hubers and Lawruk transferred their interests in the Hotel to the Penn Alto Associates Limited Partnership (hereinafter "PAA") in exchange for two

1

promissory notes, one issued to the Hubers, the second to Lawruk. The Hubers' note,[1] dated June 1, 1989, promised payment of $178,018.76, with interest accruing at "9.23% per annum" "on the unpaid principal amount" with the first such payment to be on June 1, 1990. The interest was to be paid out of PAA's "cash flow" as defined in the note.

On June 1, 1989, the Hubers and Lawruk sold the Hotel to PAA. No principal installment payment or interest installment payment was ever made on the note. Unlike the frequency of the payments of interest, the frequency of the installment payments of the principal was not set forth in the note.

The Plaintiffs claimed breach of contract in Counts One and Two of their Complaint based upon PAA's respective failures to pay installments on the note and to pay the outstanding principal and interest on the note by June 30, 2005, or upon the sale of the Hotel. Plaintiffs contended that PAS is liable for the principal and interest owed to them and that the non-recourse provision of the Note is void as contrary to public policy. Count Three of the Complaint alleged that PAA, Penn Alto Services, Inc. (hereinafter "PAS") and Penn Alto Hotel, Inc.[2] are the alter egos of Lawruk or a single entity whose corporate forms should be disregarded under the theory of piercing of their corporate veils. Complaint (Document No. 1) ¶¶ 55-57.

On June 3, 2009, the Court granted Plaintiffs' Motion for Summary Judgment against PAA, but denied Plaintiffs' Motion for Summary Judgment against the remaining Defendants. The Court also granted Defendants' Motion for Summary Judgment.

---

[1] Unless indicated otherwise all references to "the note" pertain to this note given to the Hubers.
[2] The Plaintiffs admit that Penn Alto Hotel, Inc. changed its corporate name to Penn Alto Services, Inc. and therefore the Court will consider them as the same entity. Defendants' Statement of Undisputed Fact # 28 (Document No. 81); Plaintiffs' Response #28 (Document No. 95).

PAA agreed to pay all costs of collection associated with the Hubers' enforcement of the Note. Paragraph 3.3 of the Note provides that PAA will pay all costs of enforcing the Note including reasonable attorneys' fees. It states:

> 3.3. Cost of Collecting. If this Note is not paid when due, whether at maturity or by acceleration, PENN ALTO promises to pay all costs of collection, including, but not limited to, reasonable attorneys' fees, incurred by the HOLDER on account of any such collection, whether or not suit is filed hereon.

Note, ¶ 3.3. The Court now considers Plaintiffs' Petition for Attorneys' Fees and Costs.

## Legal Standard

The amount of a fee award is within the district court's discretion so long as it "employs correct standards and procedures and makes findings of fact not clearly erroneous." *Northeast Women's Ctr. v. McMonagle*, 889 F.2d 466, 475 (3d Cir. 1989). To render a proper decision on the amount of fees to be awarded, a court must evaluate the claimed fees with "scrutiny and close evaluation." *Carpenter Tech. Corp. v. Armco, Inc.*, 808 F. Supp. 408, 410 (E.D. Pa. 1992) (citing *Codex Corp. v. Milgo Electronic Corp.*, 717 F.2d 622 (1st Cir. 1983)). However, the duty to scrutinize is less demanding when an award of counsel fees arises from a bargained-for contract clause rather than from a common fund or statute. *Id.* (citing *Coleco Industries, Inc. v. Berman*, 423 F. Supp. 275 (E.D. Pa. 1976)).

The district court in evaluating statutory provisions of attorney's fees, should exclude hours that are not reasonably expended, and hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983);

*See Carpenter Tech. Corp.*, 808 F. Supp. at 411, n.2 (holding that even though *Hensley* only spoke to statutory provisions pertaining to attorney's fees, the reasoning of the Supreme Court was applicable to a similar situation arising from a contract provision).

In determining whether fees are reasonable, the fee petitioner bears the burden of showing that the hours and rates charged are reasonable. *Hensley*, 461 U.S. at 429-30 (citing *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990)). The party opposing the fee request must demonstrate the necessity of reducing the fee award. *Id.* (citing *Id.*). To meet its burden, the fee petitioner must "submit evidence supporting the hours worked and rates claimed." *Id.* at 424.

In calculating the rate of attorneys' fees and determining if they are reasonable under Pennsylvania law, the court looks to the prevailing market rates in the relevant community. *Lohman v. Borough*, 2008 WL 2951070, *2 (M.D. Pa. 2008) (citing *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173 (3d Cir. 2001)). The "relevant community" is considered to be the forum of the action, and hence an out of town lawyer would receive not the hourly rate prescribed by his district, but rather the hourly rate prevailing in the forum in which the litigation is lodged. *Valenti v. Allstate Ins. Co.*, 243 F. Supp. 2d 200, 206 (M.D. Pa. 2003) (citing *Public Interest Research Group of New Jersey, Inc. v. Windall*, 51 F.3d 1179, 1185-86 (3d Cir. 1995)). The court should consider the experience and skill of the prevailing party's attorney, and compare the rates to those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. *Lohman*, at *2 (citing *Maldonado v. Houston*, 256 F.3d 181, 184 (3d Cir. 2001)).

Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. *Hensley*, 461 U.S. at 440. In situations "where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." *Id.* However, "where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Id.*

## Analysis

In the Petition, Plaintiffs allege that the *quantum meruit* of attorneys' fees incurred equates to $418,747. Plaintiffs allege that the total costs exclusive of attorneys' fees incurred equates to $96,383.42. The total attorneys' fees and costs incurred by the Hubers equates to $515,130.42. Defendants make two primary arguments why this total should be reduced. First, Defendants contend that this figure includes fees incurred after PAA's admission of liability on December 3, 2007. Second, Defendants argue that fees and costs incurred during the preparation of a complaint, which was sent to Defendants, but was never filed in court, should be excluded.

Defendants argue that a judgment against PAA was never in doubt in light of the fact that PAA conceded its liability in the summary judgment papers. Despite this fact, Plaintiffs served 40 subpoenas *duces tecum*, collected 31,500 pages of documents produced in the case, prepared for and took "nine lengthy complex depositions," and engaged in other activity described in pages 7-11 of the fee petition. Defendants argue that on the basis of PAA's response to the First

Set of Requests for Admissions, Plaintiffs could have moved for summary judgment, and PAA would have conceded liability, as it did when Plaintiffs finally moved for summary judgment after incurring hundreds of thousands of dollars in attorneys' fees.

Even if PAA had not conceded liability, Defendants' admissions concerning PAA's liability for failure to pay the Huber Note would have dictated that judgment be entered in favor of Plaintiffs and against PAA. Defendants conclude that if Plaintiffs had moved for summary judgment on the basis of PAA's December 2007 admissions and refrained from serving even one subpoena *duces tecum*, obtaining any documents, or taking even a single deposition, the result would have been exactly the same as it is at this juncture.

Defendants contend that Plaintiffs did not incur $515,130.42 in attorney's fees and costs prosecuting the litigation merely to obtain a judgment against PAA for breach of contract. Rather, Plaintiffs incurred the bulk of those fees and costs in pursuit of their real goal, which was to obtain a judgment against Lawruk in his personal capacity. On that score, Plaintiffs were unsuccessful. The Defendants conclude that Plaintiffs should not be awarded fees incurred unnecessarily and unreasonably in their failed effort to expand liability beyond the maker of the Huber Note. The fees and costs incurred by Plaintiffs prior to that date total $99,522.69. The balance of attorneys' fees and costs requested by Plaintiffs in the fee petition were incurred after that date.

Second, Defendants seek to further reduce the fees and costs to exclude work they allege is unrelated to the instant matter. On April 20, 2007, prior to the commencement of this case, Plaintiffs mailed to Lawruk and his wife a demand letter, together with a draft Complaint against

both Mr. and Mrs. Lawruk, their son Daniel, twenty-nine additional defendants, and "John Does 1-50." The draft Complaint was 76 pages long and purported to set forth 22 separate claims for fraud, breach of fiduciary duty, conspiracy, aiding and abetting, mail fraud, wire fraud, money laundering, extortion, witness tampering, civil RICO conspiracy, federal securities fraud, state securities fraud, breach of contract and veil piercing. This complaint was never filed, but seems to have been used solely as leverage to prompt settlement negotiation discussions.

According to the time records submitted by Plaintiffs, counsel invested 179 hours and approximately $36,500 in fees and costs preparing the draft Complaint and demand letter. Defendants argue that it is unreasonable for Plaintiffs to request attorneys' fees and costs relating to the demand letter and draft Complaint. Accordingly, Defendants contend $36,500 should be excluded because it reflects the fees and costs that went into identifying the potential defendants and developing the claims and theories set forth in Plaintiffs' draft Complaint that was never even filed. Defendants note that excluding those fees and costs would reduce Plaintiffs' fee petition to $63,022.

In this case, the Court finds that much of the attorneys' fees petitioned for bears a weak relation to the success of the litigation. While Plaintiffs invested significant legal fees and costs attempting to pierce the corporate veil and recover from Lawruk personally, those expenses were not related to the overall relief obtained by Plaintiffs against PAA. In fact, the ultimate relief obtained against PAA could have been obtained without most of the costs and fees, as PAA conceded liability early in the litigation process.

As the Supreme Court instructed in *Hensley*, this Court "should exclude from the initial

7

fee calculation hours that were not 'reasonably expended.'" Id. at 434. Where a plaintiff is deemed "prevailing," even though he "succeeded on only some of his claims for relief . . . two questions must be addressed: First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Hensley*, at 434.

In this case, the Plaintiffs failed to prevail on claims—piercing the corporate veil—that were unrelated to the claims on which they succeeded—breach of contract. Most of the fees related to attempting to pierce the corporate veil were entirely unrelated to fees incurred in pursuing the claim of breach of contract. The breach of contract was conclusively established following PAA's admission of liability. Second, Plaintiffs' victory could be described as Pyrrhic in nature. A judgment against PAA could have been obtained following PAA's admission. The additional litigation was largely unnecessary. The level of success achieved did not make the hours expended a satisfactory basis for making such a large fee award.

The Court agrees with the Defendants that most of the fees incurred after PAA's admission of liability in December 2007 were unnecessary with regard to the judgment against PAA, which as stated previously is the only success achieved by Plaintiffs, and were not reasonably expended. These fees were related to Plaintiffs' desire to move beyond PAA and impose liability upon Lawruk personally. As the Supreme Court emphasized in *Hensley*, "the district court should focus on the significance of the overall relief obtained by plaintiffs in relation to the hours reasonably expended on the litigation." *Id.* at 435. "There is no precise rule

or formula for making these determinations." *Id.* at 436. "The result is what matters." *Id.* at 435. The answers to these *Hensley* questions counsel against awarding fees for the additional litigation costs; the relief obtained in this case paled in comparison to the number of hours expended.

### Calculation of Attorney Fees & Costs

In the Petition, Plaintiffs allege that the *quantum meruit* of attorneys' fees incurred equates to $418,747, based on a total of 2,857.80 hours. Plaintiffs allege that the total costs exclusive of attorneys' fees incurred by Plaintiffs equates to $96,383.42. Plaintiffs request a total of $515,130.42 in total costs and fees.

The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Hensley*, 461 U.S. at 433. In determining the manner for calculating attorney's fees, a district court must first determine the hours reasonably expended by counsel in successfully achieving the result sought by litigation, and then multiplying those hours by a reasonable hourly rate for the attorney's services. *Joy Manuf. Corp. v. Pullman-Peabody Co.*, 742 F. Supp. 911, 912 (W.D. Pa. 1990) (citing *Lindy Bros. Builders Builders, Inc. v. American Radiator & Standard Corp.*, 487 F.2d 161 (3d Cir. 1973)), and on appeal following remand at 540 F.2d 102 (3d Cir. 1976)). The product of this multiplication is referred to as the "lodestar" which is presumed to be the reasonable fee. *Joy Manuf. Corp.*, 742 F. Supp. at 912. The District Court should also exclude from this initial fee calculation hours that were not "reasonably expended." *Hensley*, 461 U.S. at 433.

Determining the number of hours reasonably expended on litigation in this case is complicated by the fact that much of the litigation subsequent to December 2007 was rendered unnecessary in light of PAA's admission of liability. Despite the large number of hours expended—nearly 3,000—much of this litigation was largely unreasonable in light of the results obtained. Rather, following the admission, the case could have been resolved simply on summary judgment with minimal efforts. Accordingly, the court finds that 127.2 hours is a reasonable number of hours. This number represents the totality of hours incurred before December 2007, and additional reasonable hours following this date to litigate the case.

Considering the different billable rates of the various attorneys who worked on this matter ($45, $65, $80, $165, $180, $190, $225, and $260) for the 2857.80 billed hours yields a weighted average of $170 per hour. Plaintiffs provided adequate documentation in the record to show that this rate is reasonable in light of the prevailing market rates in the Western District of Pennsylvania. *See Lohman v. Borough*, 2008 WL 2951070, *2 (M.D. Pa. 2008) (citing *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173 (3d Cir. 2001)). Defendants did not provide any objections to any of the rates suggested. Thus, the Court finds that the rate of $170 per hour is a reasonable hourly rate to apply in calculating attorneys' fees in this case.

Following the lodestar formula, the Court multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate to determine the amount of a reasonable fee. In this case, 127.2 hours multiplied by an hourly rate of $170 per hour yields an award of $21,624.00. In light of the numerous expenditures Plaintiffs spent preparing for litigation, including hiring outside counsel and consultants, the Court accepts the Plaintiffs' proffer of

$96,383.42 for costs irrespective of attorney fees as a reasonable total. Adding together the fees and costs yields a total of $118,007.42.

The Court now **ORDERS** that the Plaintiffs be awarded $21,624.00 in fees and $96,383.42 in costs, for a total of $118,007.42 in fees and costs.

May 24, 2010

BY THE COURT:

KIM R. GIBSON,
**UNITED STATES DISTRICT JUDGE**